**UNITED STATES of America**

v.

**Arcadia ORTIZ and Margarita Martinez, Defendants.**

**No. 68 CR. 396.**

United States District Court,
S. D. New York.

Feb. 9, 1971.

Whitney North Seymour, Jr., U. S. Atty., for S. D. N. Y., John W. Nields, Jr., Asst. U. S. Atty., of counsel for plaintiff.

Robert Mitchell, New York City, for defendant Ortiz.

TENNEY, District Judge.

The defendant, Arcadia Ortiz, was tried before this Court sitting without a jury on December 14, 1970 and January 13, 1971. She was charged with violating Section 500 of Title 18 of the United States Code which makes it a crime to utter a false or forged postal money order "knowing any material signature or indorsement thereon to be false, forged, or counterfeited, or any material alteration therein to have been falsely made." The instant indictment, however, specifically charged that the defendant uttered the forged money orders "knowing that the * * * signature of the purchaser on each such money order was false and forged and that a material alteration had been falsely made on each such money order by the imprinting thereon of a counterfeit issuing office stamp." Although the Government has proven that the defendant uttered false and forged money orders with the knowledge that indorsements thereon

were forged, clearly there was insufficient evidence at trial to convict the defendant on the basis of knowledge of either the counterfeit issuing stamp or the false and forged signature of the purchaser. The issue, therefore, is whether a defendant may be found guilty of a crime charged in an indictment though the elements of the crime proved do not correspond to those appearing in the indictment.

It is well established that a court may not physically amend an indictment to conform to the proof adduced at trial. In Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887), the Supreme Court held that it was a violation of the defendant's Fifth Amendment right, not to "be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury", for a trial judge to permit the defendant to be tried under an indictment from which the judge has stricken a few words. The Government, in *Bain, supra,* argued to the Court that the change was harmless because: (1) the words striken were surplusage and not material to the indictment; (2) the defendant had not been injured by the change, and (3) the grand jury would have returned the indictment even without the stricken language. In ruling that it was not within the trial court's province to determine whether or not the grand jury would have returned the indictment without the stricken language, the Court stated:

" * * * [A] party can only be tried upon the indictment ·as found by * * * [the] grand jury, and especially upon all its language found in the charging part of that instrument. * * * [H]ow can it be said that, with these words stricken out, it is the indictment which was found by the grand jury? If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the

great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the constitution says 'no person shall be held to answer,' may be frittered away until its value is almost destroyed." Ex parte Bain, *supra* at 10, 7 S.Ct. at 786.

From the foregoing it is clear that this ,Court may not convict a defendant upon proof of activity not in fact charged, even though if it were charged in the indictment it might constitute a crime. The Supreme Court, in Stirone v. United States, 361 U.S. 212, 217, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), held that the trial court had *in effect* amended the indictment when it received evidence that the defendant, who had been charged in the indictment with interfering with interstate shipments of sand into Pennsylvania, had also interfered with interstate shipments of steel out of Pennsylvania, although the indictment did not charge this latter activity. Thus, the admission of evidence and the charge to the jury with regard to the steel shipments had been error on the part of the trial court. It was further noted that:

"The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge. Thus the basic protection the grand jury was designed to afford is defeated by a device or method which subjects the defendant to prosecution for interference with interstate commerce which the grand jury did not charge. * * * It follows that when only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, *even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened.* The right to have the

grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment." Stirone v. United States, *supra* at 218–219, 80 S.Ct. at 273–274. (Emphasis added; footnote omitted.)

Hence, it is clear that this Court may neither physically amend the indictment to conform to the evidence at trial, nor permit the defendant to be convicted on the basis of evidence of knowledge not charged in the indictment. The Government contends, however, that their suggested change in the reading of the indictment would not constitute an amendment since the discrepancy between the evidence and the indictment is only an immaterial variance. *See*, e. g., Stewart v. United States, 395 F.2d 484 (8th Cir. 1968); Heisler v. United States, 394 F.2d 692 (9th Cir.), cert. denied, 393 U.S. 986, 89 S.Ct. 463, 21 L.Ed.2d 448 (1968). In both of these cases, however, the court merely permitted the correction of clerical or typographical errors in the indictments in order to conform them to the actual evidence.[1] Moreover, since the changes were not in the charging part of the indictment, the defendants were not deprived of their Fifth Amendment right to be tried upon an indictment presented by a grand jury. In the present case, however, in order to conform the indictment to the evidence, the Court would be obliged to amend the charging part of the indictment, which contains the elements of the crime charged. In response to a similar argument that the change in question had only been an immaterial variance, the

Supreme Court in Stirone v. United States, *supra*, 361 U.S. at 217, 80 S.Ct. at 273, stated that "[w]hile there was a variance in the sense of a variation between pleading and proof, that variation * * * destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury. Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error."

Furthermore, as indicated by the court's holdings in both *Bain* and *Stirone, supra*, it is also error to judicially amend an indictment since a court has no way of knowing whether the grand jury would have returned the indictment with the suggested changes. Thus, since I am unable to say whether the grand jury would have returned this indictment with language charging the defendant with knowledge that the indorsements on the money orders were false and forged, I cannot make those changes suggested by the Government. In fact, at the opening of the trial, the Assistant United States Attorney requested handwriting exemplars from the defendant because just prior to trial, "the government did not have any reason to think that there was any handwriting * * * on the money orders, which was of the defendant."[2] Yet, the only evidence introduced by the Government to prove that the defendant uttered the money orders with knowledge that a signature thereon was false or forged was evidence to substantiate its claim that the defendant forged the indorsements herself. If, prior to that time,

---

1. In Stewart v. United States, 395 F.2d 484 (8th Cir. 1968), the court permitted the amendment of the indictment to read June 21, 1967 rather than July 21, 1967, noting that all of the evidence presented to the grand jury related to June 21, 1967 and that the error was obviously typographical. In addition, since the date was not an essential element of the crime charged, the amendment did not relate to the charging part of the indictment. In Heisler v. United States, 394 F.2d 692 (9th Cir. 1968), a clerical

error caused the indictment to charge the defendant with uttering a twenty dollar Federal Reserve note instead of a ten dollar note. The court permitted the correction of the indictment on the ground that there was no change in the element of the crime charged. Furthermore, as evidence that the discrepancy was merely a clerical error, was the fact that the serial number of the ten dollar note appeared in the indictment.

2. Tr. at 2.

the Government had no reason to believe that the defendant indorsed the money orders, it is reasonable to infer that no evidence was presented to the grand jury that the defendant had knowledge that the indorsements on the money orders were false when she uttered them. This could, of course, account for the grand jury's failure to charge such knowledge in the indictment. Hence, to permit the defendant to be convicted under an indictment amended to charge that she uttered the money orders with knowledge that the indorsements were false and forged would not only deprive the defendant of her right to be tried upon an indictment returned by a grand jury, but would also expose her to a conviction upon an indictment the grand jury might never have had a basis to return.

Accordingly, and for the foregoing reasons, I find the defendant not guilty of the crimes charged in the indictment and direct that a judgment of acquittal be entered.

So ordered.